ANGEL NAVARRO (State Bar No. 155702)
E-mail: angel_navarro@me.com
Attorney at Law
The Petroleum Building
714 W. Olympic Blvd., Suite 450
Los Angeles, California  90015
Telephone (213) 744-0216
Facsimile (213) 746-4435

Attorneys for Defendant
MARICELA LONG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR 13-00819-PA-7 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DEFENDANT MARICELA LONG'S |
| | ) | MOTION TO DISMISS INDICTMENT |
| THOMPSON, et. al., | ) | FOR OUTRAGEOUS GOVERNMENT |
| | ) | CONDUCT; EXHIBITS |
| Defendant. | ) | |
| | ) | Hearing Date: April 14, 2014 |
| | ) | |
| | | Hearing Time: 3:00 p.m. |

Defendant, Maricela Long, by and through her counsel of record, Angel Navarro, Attorney at Law, hereby submits the enclosed motion to dismiss the Indictment based on outrageous government conduct.  The grounds of this motion are the Due Process Clause of

/

/

/

/

/

/

1  the Fifth Amendment and the Court's own inherent supervisory power
2  over the administration of justice.
3
4
5                              Respectfully submitted,
6
7
   DATED: March 16, 2014        By_____/s/_____
8                                  ANGEL NAVARRO
9                                  Attorney at Law
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF CONTENTS

2

3       I.    Introduction...........................................3

4       II.   Statement of Facts....................................4

5       III.  Legal Argument........................................7

6             A.   Known Criminal Characteristics Of The

7                  Defendants......................................8

8             B.   Individualized Suspicion Of The Defendants.......8

9             C.   The Government's Role In Creating The Crime

10                 Of Conviction...................................9

11            D.   The Government's Encouragement Of The Defendants

12                 To Commit The Offense Conduct...................11

13            E.   The Nature Of The Government's Participation

14                 In The Offense Conduct..........................14

15            F.   The Nature Of The Crime Being Pursued And

16                 Necessity For The Actions Taken In Light Of The

17                 Nature Of The Criminal Enterprise At Issue......15

18      IV.   Conclusion...........................................16

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3       Federal Cases

4   *Weatherford v. Bursey,*

5   429 U.S. 545 (1976)......................................3

6   *United States v. Russell,*

7   411 U.S. 423 (1973)......................................7

8   *United States v. Stinson,*

9   647 F. 3d 1196 (9th Cir. 2011)...........................7

10  *United States v. Restrepo,*

11  930 F. 2d 705 (9th Cir. 1991)............................7

12  *United States v. Black,*

13  733 F. 3d 294 (9th Cir. 2013)......................,7,15

14  *United States v. Washington,*

15  431 U.S. 174 (1977).....................................12

16  *United States v. Jacobs,*

17  531 F. 2d 87 (2nd Cir. 1976)............................13

18  *United States v. Crocker,*

19  568 F. 2d 1049 (3rd Cir. 1977).........................13

20  *United States v. Pacheco-Ortiz,*

21  889 F. 2d 301 (1st Cir. 1989)..........................13

22  *United States v. Jenkins,*

23  785 F. 2d 1387 (9th Cir. 1986).........................13

24      Other Authorities

25  Due Process Clause Of The Fifth Amendment................2

26

27

28

I

<u>INTRODUCTION</u>

The use of undercover tactics, including jail house informants and undercover agents, is nothing new to the criminal justice system.  Courts have historically granted much leeway to the government, as the government fights crime.  The Supreme Court has stated more than once that the law enforcement community can use undercover investigations to ferret out suspected criminal behavior. <u>Weatherford v. Bursey</u>, 429 U.S. 545, 557 (1976).  But contrary to what the Federal Bureau of Investigations (FBI) or what federal prosecutors may think or profess to individual grand juries, the federal government's power is not limitless.  The struggle between the power of the federal government and individual rights goes way back to the days of Thomas Jefferson and his disagreements with John Adams, Alexander Hamilton and the Federalists.

The Courts serve to make sure that the government's actions against its own citizens do not result in individual rights being violated.  It is in this context that the Court can dismiss a criminal prosecution when the government's own conduct is so outrageous that a dismissal of the underlying charges is the appropriate remedy.  Ms. Long submits to this Court that the "totality" of the government's conduct in this case warrants a dismissal of the underlying charges.

/

/

3

1                                  II

2                        STATEMENT OF FACTS

3

4        Maricela Long is a 23-year veteran of the Los Angeles

5   Sheriffs Department (LASD).   In many ways, her story is a

6   reflection of what the LASD's mission is all about.   Ms. Long grew

7   up in Los Angeles, California.   She attended local schools and

8   joined the LASD first as a civilian employee.   As a woman of color,

9   she was on a path not followed by many women like her.   She became

10  a deputy sheriff and she worked her way through the LASD.   She

11  became a sergeant within the department.   Her hard work and

12  dedication landed what she thought was a much coveted position.   In

13  early August of 2011, she was assigned to work for the Internal

14  Criminal Investigations Bureau (ICIB) of the LASD.   Ms. Long was

15  going to be investigating crimes committed by deputies and other

16  criminal activity committed within the LASD.

17

18       Unbeknownst to Ms. Long, she was about to walk into a

19  firestorm.   At the time that Ms. Long was assigned to work for

20  ICIB, the FBI was investigation alleged civil rights violations at

21  the Los Angeles Mens Central Jail (MCJ).   In an apparent effort to

22  bolster its operation within the MCJ, the FBI decided to introduce

23  a cell phone into the MCJ.   To be more specific, the FBI had

24  decided that it would introduce a cell phone into the MCJ without

25  notifying the LASD.   It appears that the federal government ignored

26  its own guidelines and policies in introducing a cell phone into

27

28

                                   4

1   the MCJ.[1]   The FBI operation involved relying on a jail house

2   informant.   And not just any jail house informant.   A jail

3   informant who had been sentenced to 423 years in state prison. It

4   appears that the government determined that it was a wise decision

5   to give a cell phone to a jail house informant and allow the

6   informant to keep the cell phone within the MCJ for extended

7   periods of time without any real supervision from the FBI.

8

9       The government's conduct was soon discovered by LASD deputies

10  assigned to the jail.   The LASD also quickly determined that the

11  seized telephone had been used to call the civil rights division of

12  the local FBI office.   In addition, the LASD examined the cell

13  phone and found what appeared to be evidence of narcotics.   To top

14  this off, the jail house informant began to make claims that he had

15  been purchasing narcotics from corrupt LASD personnel.

16  Furthermore, the jail house informant eventually admitted that the

17  cell phone had been provided to him by his FBI handlers.

18

19      At this point in the investigation, the LASD "circled the

20  wagons".   The top brass within the LASD conducted an invitation-

21  only meeting at sheriff's headquarters (Ms. Long was not invited to

22  attend the meeting).   After this meeting, the sheriff's department

23  set up a task force to investigate the so-called FBI cell phone.

24  This was not a typical situation where an inmate had been found

25  with a cell phone.   Jails throughout the country are constantly

26  dealing with inmates who are found with cell phones within the

27  _____

28      [1]A copy of the Attorney General's Guidelines Regarding The Use
Of Confidential Informants has been attached as Exhibit A.

1  walls of the jail.

2

3       As this Court can imagine, the possession of cell phones by

4  inmates poses a direct threat to the safety and well-being of law

5  enforcement personnel, jail house staff, inmates, and society as a

6  whole.  When it turned out that the seized cell phone was connected

7  to the FBI, the plot only thickened.  As a direct result of the

8  LASD's investigation into the "FBI cell phone", the government

9  decided in its infinite wisdom that the LASD had conspired to

10 interfere with the FBI's investigation.  The United States Attorney

11 for our district did its own investigation and it determined that

12 the LASD was not simply engaging in civil rights violations, but

13 that the LASD was making efforts to interfere with the FBI

14 investigations at the MCJ.

15

16      The government (this time the United States Attorneys Office)

17 then decided that they too would ignore its own written protocol

18 and rules by having actual targets testify before a federal grand

19 jury.[2]  Four of the defendants in this case were called before the

20 grand jury and not one of them was ever informed that they were

21 targets or subjects of the federal investigation.  Furthermore,

22 during the grand jury sessions associated with Ms. Long and her co-

23 defendants, the government provided incorrect statements of the law

24 with respect to important legal concepts such as the Supremacy

25 Clause to both witnesses and members of the grand jury.

26 /

27

28      [2]A copy of the United States Attorneys' Manual (USAM) will be
   filed in connection with a separate motion filed by a co-defendant.

6

III

LEGAL ARGUMENT

Outrageous government conduct takes place when the actions of the government (typically through the use of informants or law enforcement officers) is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." United States v. Russell, 411 U.S. 423, 431-32, 93 S.Ct. 1637, 36 L.Ed. 2d 366 (1973). Ms. Long recognizes that dismissals on outrageous government conduct grounds are limited to "extreme cases" in which the defendant can demonstrate that the government's conduct "violates fundamental fairness" and is "so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Stinson, 647 F. 3d 1196, 1209 (9th Cir. 2011) In making its determination, the Court is required to focus on the government's actions, not the defendant's actions. United States v. Restrepo, 930 F. 2d 705, 712 (9th Cir. 1991) Ms. Long submits to this Court that this case is so unique that the most appropriate remedy is for this Court to dismiss based on the totality of the government's conduct.

The Ninth Circuit has set forth a combination of factors test to determine if the government's actions in any one particular case warrant dismissal of criminal charges. In the 2013 decision of United States v. Black, the Court of Appeals identified six factors which must be analyzed in determining whether the government's conduct is outrageous enough to result in a dismissal. United States v. Black, 733 F. 3d 294, 303-304 (9th Cir. 2013).

The factors are as follows: (1) known criminal characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendants to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; and (6) the nature of the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue.

A.    KNOWN CRIMINAL CHARACTERISTICS OF THE DEFENDANTS:

The first of the six factors ask that the Court consider who the particular defendants are.  This factor focuses on the particular defendant's background or propensity to commit crimes. This factor is clearly not meant to apply to Ms. Long or any of her co-defendants.  Every defendant in this case is a respected member of the law enforcement community.  None of the charged defendants in this case was a target of any civil rights violations within the MCJ.  Ms. Long and her co-defendants were all experienced law enforcement personnel.  There was nothing about any of the defendants in this case that would have warranted a specific investigation by the federal government.

B.    INDIVIDUALIZED SUSPICION OF THE DEFENDANTS:

In this investigation, there was no reason whatsoever to suspect that Ms. Long or her co-defendants were suspected of being involved in any criminal activity.  From the discovery provided by

1   the government, it appears that the government was investigating
2   alleged violations of civil rights within the MCJ.  Ms. Long, and
3   co-defendants Leavins and Craig, did not even work at the jail.
4   Ms. Long, and co-defendants Leavins and Craig were all members of
5   the ICIB unit of the LASD.  This unit had nothing to do with the
6   day to day activities within the MCJ.  There was nothing about Ms.
7   Long or her co-defendants which would have cause the FBI to focus
8   on them as part of the civil rights investigation.
9
10  C.   THE GOVERNMENT'S ROLE IN CREATING THE CRIME OF CONVICTION:
11
12       The allegations against Ms. Long and her co-defendants focus
13  on an alleged conspiracy to obstruct an FBI investigation.
14  According to the Indictment, Ms. Long and her co-defendants
15  attempted to obstruct an FBI investigation and then lied to the
16  FBI.  On the other hand, but for the government's recklessness in
17  supplying a cell phone to a questionable jail house informant, the
18  LASD would never have set up a special task force in this case.
19
20       The government violated or ignored its own internal policies
21  by breaking the law and introducing a prohibited item into the MCJ.
22  The government also appears to have ignored its own internal
23  protocol in the way the jail house informant was handled in this
24  case. The Attorney General manual for the use of "high Level
25  Confidential Informant(s)" (p. 3 of Exhibit A), sets forth that
26  individuals like Anthony Brown must be supervised under very strict
27  guidelines.  From the information provided by the government in
28  this case, it appears that the FBI failed to follow the Attorney

1  General's own guidelines.  For example, it does not appear as if
2  the FBI ever completed an Initial Suitability Determination Report
3  as required by the Attorney General manual (Exhibit A, p. 8).

4

5      In addition, high level confidential informants like Anthony
6  Brown are subject to special approval rules (See Exhibit A, p. 13)
7  Perhaps more troubling is the undisputed fact that the jail house
8  informant in this case was a sentenced state prisoner.[3] The
9  Attorney General manual specifically states:

10      Prior to utilizing a state or local prisoner, probationer,
11      parolee, or supervised releasee as a CI, a Field Manager of a
12      JLEA shall determine if the use of that person in such a
13      capacity would violate the terms and conditions of the
14      person's incarceration, probation, parole or supervised
15      release.  If the Field Manager has reason to believe that it
16      would violate such terms and conditions, prior to using the
17      person as a CI, the Field Manager or his or her designee must
18      obtain the permission of a state or local prison, probation,
19      parole, or supervised release official with authority to
20      grant such permission, which permission shall be documented
21      in the CI's files.  If such permission is denied or it is
22      inappropriate for operational reasons to contact the
23      appropriate state or local official, the JLEA may seek to
24      obtain authorization for the use of such individual as a CI
25      from the state or local Court then responsible for the

26
_____

27      [3]It is also unclear if Anthony Brown may also be a federal
28  prisoner.  The BOP website shows him to be "not in BOP custody" as
   opposed to showing a release date from federal custody.  See
   Exhibit B.

1    individual's incarceration, probation, parole, or supervised
2    release.
3    (Exhibit A, p. 16).  From the discovery provided by the government,
4    it does not appear as if anyone from within the FBI ever obtained
5    the appropriate approval from either a state court and obviously
6    not from the LASD or California Department of Corrections.
7    The government cannot simply break the law and ignore its own
8    policies and then attempt to use the Supremacy Clause to shield its
9    agents from accountability.
10
11   This case presents a unique set for facts.  This case is not
12   a situation where the government was investigating any of these
13   particular defendants.  Rather, the government was allegedly
14   investigating civil rights violations which were allegedly taking
15   place within the MCJ.  The defendants in this case were brought
16   together as a direct result of the government's actions in
17   introducing a prohibited and dangerous item into a jail.  The
18   investigation was further complicated when the jail house informant
19   was a sentenced prisoner.  Furthermore, the investigation conducted
20   by the LASD in this case revealed that the informant had apparently
21   taken pictures of drugs on multiple occasions.
22
23   D.    THE GOVERNMENT'S ENCOURAGEMENT OF THE DEFENDANTS TO COMMIT
24         THE OFFENSE CONDUCT:
25
26   The alleged criminal acts committed in this came about as a
27   direct result of the federal government's questionable, reckless
28   and illegal actions.  As noted above, the defendants in this case

1   are all experienced law enforcement personnel within the LASD.  The

2   government could have very easily prevented this entire mess by

3   following some very simple protocol and being open with the LASD.

4

5      The government introduced a cell phone into the MCJ.  The

6   cell phone was in the hands of a jail house informant.  The

7   informant was a sentenced state prisoner.  The LASD discovered the

8   cell phone.  The LASD made efforts to reach out to the FBI through

9   proper channels with respect to the cell phone.  The LASD did what

10   any good law enforcement had to do: it began to do its own internal

11   investigation of the cell phone.

12

13      The government is now claiming that members of the LASD broke

14   federal law by interfering and obstructing the investigation being

15   conducted by the FBI.  The government did everything it could to

16   make sure that the LASD had to react as it did.

17

18      Equally troubling is the manner in which this federal

19   investigation was handled at the local level.  Law enforcement

20   personnel were subpoenaed to testify before a federal grand jury.

21   Four of these witnesses were clearly targets of the federal

22   investigation.  And yet, Ms. Long along with co-defendants Leavins,

23   Sexton, and Craig were all summoned pursuant to a court order to

24   testify before the grand jury.  Such actions appear to violate the

25   defendant's Fifth and Sixth Amendment rights.  The Supreme Court

26   has previously issued opinions with respect to the rights and

27   warning to be afforded to witnesses before a gand jury.  See United

28   States v. Washington, 431 U.S. 174 (1977).  In light of Supreme

1  Court authority, the government has implemented a USAM to deal with
2  the issue of target witnesses and the grand jury process.   The
3  Attorney General has developed a policy of providing warnings to
4  targets who appear before grand juries.   Several circuits have
5  issued opinions dealing with situations where targets are not
6  properly warned before they testify before a grand jury.   See
7  United States v. Jacobs, 531 F. 2d 87, 88-89 (2nd Cir. 1976); United
8  States v. Crocker, 568 F. 2d 1049 (3rd Cir. 1977); United States v.
9  Pacheco-Ortiz, 889 F. 2d 301 (1st Cir. 1989).

10

11     The Ninth Circuit has also dealt with this issue, although
12  not in the context of a case like this one.   In the case of United
13  States v. Jenkins, the Court was dealing with a defendant who had
14  been provided with a letter which indicated that the defendant was
15  the subject of a grand jury investigation and that the defendant
16  could become a target.   Jenkins, 785 F. 2d 1387, 1395 (9th Cir.
17  1986).   The Court went on to affirm the denial of a motion to
18  suppress.   In the case of Ms. Long, she was never told orally or in
19  writing that she was a target of the investigation.

20

21     Of equal and perhaps greater concern is the fact that the
22  federal grand jury was incorrectly instructed with respect to legal
23  concepts such as the Supremacy Clause.   And as this Court is aware,
24  the Supremacy Clause appears to be a particular focus point in this
25  case.
26  /
27  /
28  /

13

E.   THE NATURE OF THE GOVERNMENT'S PARTICIPATION IN THE OFFENSE
CONDUCT:

The fifth factor enumerated by the Court also illustrates that the government had a central role in the alleged "offense conduct". The Indictment in this case accuses Ms. Long and her co-defendants of being involved in a conspiracy to interfere with an FBI investigation. In addition, the Indictment accuses Ms. Long and her co-defendants of lying to the FBI as well. As previously noted, the alleged criminal conduct in this case came about as a direct result of an FBI investigation which appears to have violated FBI protocol and established FBI guidelines. Furthermore, the federal investigation which resulted in the current federal charges involved the use of a questionable jail house informant.

This Court should not allow the government to continue to hide in the Federal Building in Westwood, California. This Court must hold the federal government accountable for its actions and for its inactions. The federal government, through its reckless and illegal actions, forced the LASD to react in the only way that the LASD could have reacted. The federal government is now accusing a number of well-respected public servants of breaking the law. Ms. Long and her co-defendants were simply doing their job.

/
/
/
/
/

F.   THE NATURE OF THE CRIME BEING PURSUED AND NECESSITY FOR THE
     ACTIONS TAKEN IN LIGHT OF THE NATURE OF THE CRIMINAL
     ENTERPRISE AT ISSUE:

     This sixth and final factor also cuts in favor of Ms. Long
and her co-defendants.  The federal government is accusing a number
of law enforcement members of conspiring to interfere with an FBI
investigation.  What the government clearly lacks in this case is
an actual criminal enterprise.

     No one can honestly state that the LASD is a criminal
enterprise.  If in fact there are or were individual deputies who
were violating the civil rights of prisoners, that is a clear
governmental interest.  But, there is nothing about any of the
defendants in this case which would tend to indicate that they were
members of a criminal enterprise.

     Many times, these types of motions are brought by criminal
defendants who have been arrested as a result of undercover
operations.  The defendants in the Black case for example, were
prosecuted as a result of a fake stash house prosecution.  In the
present case, there does not appear to be any real connection
between the use of the jail house informant and the alleged civil
rights being committed within the MCJ.

     From the evidence provided by the government, the cell phone
which was introduced into the MCJ was never used by the informant
to photograph civil rights violations.  The telephone appears to

1  have been introduced in an attempt to expose a corrupt deputy.
2  There has never been a connection made between the allegedly
3  corrupt deputy and any civil rights violations.  The cell phone
4  introduction appears to have been nothing more than a fishing
5  expedition.

6                                IV

7                            CONCLUSION

8

9       LASD Sergeant Maricela Long and her co-defendants have no
10  business being in federal court.  The defendants in this case are
11  all hard-working public servants who did their job.  The federal
12  government, through its reckless, questionable and illegal actions
13  has decided to charge these defendants with breaking the law.  This
14  Court should remedy this situation as a result of the government's
15  outrageous conduct in this case.

16

17

18                                Respectfully submitted,

19

20  DATED: March 16, 2014          By_____/s/_____
21                                    ANGEL NAVARRO
22                                    Attorney at Law

23

24

25

26

27

28