ANGEL NAVARRO (State Bar No. 155702)
E-mail: angel_navarro@me.com
Attorney at Law
The Petroleum Building
714 W. Olympic Blvd., Suite 450
Los Angeles, California  90015
Telephone (213) 744-0216
Facsimile (213) 746-4435

Attorneys for Defendant
MARICELA LONG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR 13-00819-PA-7 |
| Plaintiff, | ) ) | EXHIBITS IN SUPPORT OF |
| v. | ) ) | DEFENDANT MARICELA LONG'S MOTION TO DISMISS INDICTMENT |
| THOMPSON, et. al., | ) ) | FOR OUTRAGEOUS GOVERNMENT CONDUCT |
| Defendant. | ) ) | Hearing Date: April 14, 2014 |
| | ) | Hearing Time: 3:00 p.m. |

Defendant, Maricela Long, by and through her counsel of
record, Angel Navarro, Attorney at Law, hereby files the
accompanying Exhibits in support of her motion to dismiss the
Indictment for outrageous government conduct.

.

Respectfully submitted,

DATED: March 16, 2014          By_____/s/_____
                                  ANGEL NAVARRO
                                  Attorney at Law

# EXHIBIT A

**THE ATTORNEY GENERAL'S GUIDELINES
REGARDING THE USE OF CONFIDENTIAL INFORMANTS**

## Preamble

The following Guidelines regarding the use of confidential informants are issued under the authority of the Attorney General as provided in sections 509, 510, and 533 of title 28, United States Code.  They apply to the use of confidential informants in criminal investigations and prosecutions by Department of Justice law enforcement agencies and federal prosecuting offices as specified in paragraph (I)(A) below.

## TABLE OF CONTENTS

I.    **GENERAL PROVISIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    **PURPOSE AND SCOPE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    **DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        1.    "Department of Justice Law Enforcement Agency" or "JLEA" . . . . . . . . 1

        2.    "Field Manager" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        3.    "Senior Field Manager" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        4.    "Federal Prosecuting Office" or "FPO" . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        5.    "Chief Federal Prosecutor" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        6.    "Confidential Informant" or "CI" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        7.    "Cooperating Defendant/Witness" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        8.    "Source of Information" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        9.    "High Level Confidential Informant" . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        10.    "Tier 1 Otherwise Illegal Activity" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        11.    "Tier 2 Otherwise Illegal Activity" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        12.    "Fugitive" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        13.    "Confidential Informant Review Committee" or "CIRC" . . . . . . . . . . . . 5

    C.    **PROHIBITION ON COMMITMENTS OF IMMUNITY BY FEDERAL LAW ENFORCEMENT AGENCIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    **REVEALING A CONFIDENTIAL INFORMANT'S TRUE IDENTITY** . . . 5

    E.    **DUTY OF CANDOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    F.    **MAINTAINING CONFIDENTIALITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

i

G.  EXCEPTIONS AND DISPUTE RESOLUTION ........................ 7

H.  RIGHTS OF THIRD PARTIES ..................................... 7

I.  COMPLIANCE .................................................. 7

II.  REGISTERING A CONFIDENTIAL INFORMANT ........................ 8

A.  SUITABILITY DETERMINATION ................................ 8

1.  Initial Suitability Determination ................................ 8

2.  Continuing Suitability Review ................................... 9

3.  Review of Long-Term Confidential Informants ................... 10

B.  REGISTRATION ................................................ 11

C.  INSTRUCTIONS ............................................... 11

D.  SPECIAL APPROVAL REQUIREMENTS .......................... 13

1.  High Level Confidential Informants ............................. 13

2.  Individuals Under the Obligation of a Legal Privilege of
    Confidentiality or Affiliated with the Media ..................... 14

3.  Federal Prisoners, Probationers, Parolees, Detainees, and
    Supervised Releasees .......................................... 14

4.  Current or Former Participants in the Witness Security Program ...... 15

5.  State or Local Prisoners, Probationers, Parolees, or
    Supervised Releasees .......................................... 15

6.  Fugitives .................................................... 16

III.  RESPONSIBILITIES REGARDING REGISTERED CONFIDENTIAL
     INFORMANTS ................................................. 17

A.  GENERAL PROVISIONS ........................................ 17

1.  No Interference With an Investigation of a Confidential Informant .... 17

      2.      Prohibited Transactions and Relationships . . . . . . . . . . . . . . . . . . . . . . 17

**B.**     **MONETARY PAYMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      1.      General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      2.      Prohibition Against Contingent Payments . . . . . . . . . . . . . . . . . . . . . . . 18

      3.      Approval for a Single Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      4.      Approval for Annual Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      5.      Approval for Aggregate Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      6.      Documentation of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      7.      Accounting and Reconciliation Procedures . . . . . . . . . . . . . . . . . . . . . . 19

      8.      Coordination with Prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**C.**     **AUTHORIZATION OF OTHERWISE ILLEGAL ACTIVITY** . . . . . . . . 19

      1.      General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      2.      Authorization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      3.      Findings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      4.      Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      5.      Precautionary Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      6.      Suspension of Authorization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      7.      Revocation of Authorization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      8.      Renewal and Expansion of Authorization . . . . . . . . . . . . . . . . . . . . . . . 23

      9.      Emergency Authorization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

      10.     Designees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

      **D.**     **LISTING A CONFIDENTIAL INFORMANT IN AN ELECTRONIC SURVEILLANCE APPLICATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**IV.**     **SPECIAL NOTIFICATION REQUIREMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      **A.**     **NOTIFICATION OF INVESTIGATION OR PROSECUTION** . . . . . . . . 25

      **B.**     **NOTIFICATION OF UNAUTHORIZED ILLEGAL ACTIVITY** . . . . . . . 25

      **C.**     **NOTIFICATION REGARDING CERTAIN FEDERAL JUDICIAL PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

      **D.**     **PRIVILEGED OR EXCULPATORY INFORMATION** . . . . . . . . . . . . . . . 26

      **E.**     **RESPONDING TO REQUESTS FROM CHIEF FEDERAL PROSECUTORS  REGARDING A CONFIDENTIAL INFORMANT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      **F.**     **FILE REVIEWS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      **G.**     **DESIGNEES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**V.**     **DEACTIVATION OF CONFIDENTIAL INFORMANTS** . . . . . . . . . . . . . . . . . . . 27

      **A.**     **GENERAL PROVISIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      **B.**     **DELAYED NOTIFICATION TO A CONFIDENTIAL INFORMANT** . . . 28

      **C.**     **CONTACTS WITH FORMER CONFIDENTIAL INFORMANTS DEACTIVATED FOR CAUSE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      **D.**     **COORDINATION WITH PROSECUTORS** . . . . . . . . . . . . . . . . . . . . . . 28

# I. GENERAL PROVISIONS

## A.   PURPOSE AND SCOPE

1.   The purpose of these Guidelines is to set policy regarding the use of Confidential Informants, as defined below, in criminal investigations and prosecutions by all Department of Justice Law Enforcement Agencies and Federal Prosecuting Offices, as defined below.

2.   These Guidelines do not apply to the use of Cooperating Defendants/Witnesses or Sources of Information, as defined below, unless a Department of Justice Law Enforcement Agency, in its discretion, chooses to apply these Guidelines to such persons.

3.   These Guidelines are mandatory and supersede the Attorney General's Guidelines on the Use of Informants in Domestic Security, Organized Crime, and Other Criminal Investigations (December 15, 1976); the Attorney General's Guidelines on FBI Use of Informants and Confidential Sources (December 2, 1980); Resolution 18 of the Office of Investigative Agency Policies (August 15, 1996); and any other guidelines or policies that are inconsistent with these Guidelines. These Guidelines do not supersede otherwise applicable ethical obligations of Department of Justice attorneys, which can, in certain circumstances (for example, with respect to contacts with represented persons), have an impact on law enforcement agents' conduct.

4.   These Guidelines do not limit the ability of a Department of Justice Law Enforcement Agency to impose additional restrictions on the use of Confidential Informants.

5.   These Guidelines apply to the use of a Confidential Informant in a foreign country only to the extent that the Confidential Informant is reasonably likely to be called to testify in a domestic case.

6.   These Guidelines do not apply to the use of Confidential Informants in foreign intelligence or foreign counterintelligence investigations.

## B.   DEFINITIONS

1.   "Department of Justice Law Enforcement Agency" or "JLEA" –

    a.   The Drug Enforcement Administration;

    b.   The Federal Bureau of Investigation;

    c.   The Immigration and Naturalization Service;

     d.     The United States Marshals Service; and

     e.     The Department of Justice Office of the Inspector General.

2.     "Field Manager" – a JLEA's first-line supervisor, as defined by the JLEA (typically, GS-14 rank or higher).

3.     "Senior Field Manager" – a JLEA's second-line supervisor, as defined by the JLEA (typically, GS-15 rank or higher).

4.     "Federal Prosecuting Office" or "FPO" –

     a.     The United States Attorneys' Offices;

     b.     The Criminal Division, Tax Division, Civil Rights Division, Antitrust Division, and Environmental and Natural Resources Division of the Department of Justice; and

     c.     Any other litigating component of the Department of Justice with authority to prosecute federal criminal offenses.

5.     "Chief Federal Prosecutor" – the head of a FPO.

6.     "Confidential Informant" or "CI" – any individual who provides useful and credible information to a JLEA regarding felonious criminal activities, and from whom the JLEA expects or intends to obtain additional useful and credible information regarding such activities in the future.

7.     "Cooperating Defendant/Witness" – any individual who:

     a.     meets the definition of a CI;

     b.     has agreed to testify in a proceeding as a result of having provided information to the JLEA; and

     c.     (i) is a defendant or potential witness who has a written agreement with a FPO, pursuant to which the individual has an expectation of future judicial or prosecutive consideration or assistance as a result of having provided information to the JLEA, or

           (ii) is a potential witness who has had a FPO concur in all material aspects of his or her use by the JLEA.

8.     "Source of Information" – any individual who:

    a.     meets the definition of a CI;

    b.     provides information to a JLEA solely as a result of legitimate routine access to information or records, such as an employee of the military, a law enforcement agency, or a legitimate business (e.g., phone company, banks, airlines), and not as a result of criminal association with persons of investigative interest to the JLEA; and

    c.     provides such information in a manner consistent with applicable law.

9.     "High Level Confidential Informant" – a CI who is part of the senior leadership of an enterprise that

    a.     has: (i) a national or international sphere of activities, or (ii) high significance to the JLEA's national objectives, even if the enterprise's sphere of activities is local or regional; and

    b.     engages in, or uses others to commit, any of the conduct described below in paragraph (I)(B)(10)(b)(i)-(iv).

10.    "Tier 1 Otherwise Illegal Activity" – any activity that:

    a.     would constitute a misdemeanor or felony under federal, state, or local law if engaged in by a person acting without authorization; and

    b.     that involves –

        (i) the commission, or the significant risk of the commission, of any act of violence by a person or persons other than the Confidential Informant;[1]

        (ii) corrupt conduct, or the significant risk of corrupt conduct, by senior federal, state, or local public officials;

---

[1] Bookmaking that is significantly associated with, or substantially controlled by, organized crime ordinarily will be within the scope of paragraph (I)(B)(10)(b)(i).  Thus, for example, where bookmakers have a financial relationship with members or associates of organized crime, and/or use members or associates of organized crime to collect their debts, the conduct of those bookmakers would create a significant risk of violence, and would therefore fall within the definition of Tier 1 Otherwise Illegal Activity.

(iii) the manufacturing, importing, exporting, possession, or trafficking of controlled substances in a quantity equal to or exceeding those quantities specified in United States Sentencing Guidelines § 2D1.1(c)(1);

(iv) financial loss, or the significant risk of financial loss, in an amount equal to or exceeding those amounts specified in United States Sentencing Guidelines § 2B1.1(b)(1)(I);[2]

(v) a Confidential Informant providing to any person (other than a JLEA agent) any item, service, or expertise that is necessary for the commission of a federal, state, or local offense, which the person otherwise would have difficulty obtaining; or

(vi) a Confidential Informant providing to any person (other than a JLEA agent) any quantity of a controlled substance, with little or no expectation of its recovery by the JLEA.

11.     "Tier 2 Otherwise Illegal Activity" – any other activity that would constitute a misdemeanor or felony under federal, state, or local law if engaged in by a person acting without authorization.

12.     "Fugitive" – an individual:

   a.     for whom a federal, state, or local law enforcement agency has placed a wanted record in the NCIC (other than for a traffic or petty offense);

   b.     who is located either within the United States or in a country with which the United States has an extradition treaty; and

---

[2] The citations to the United States Sentencing Guidelines (USSG) Manual are to the 2001 Edition. The references herein to particular USSG Sections are intended to remain applicable to the most closely corresponding USSG level in subsequent editions of the USSG Manual in the event that the cited USSG provisions are amended. Thus, it is intended that subsection (iii) of this paragraph will remain applicable to the highest offense level in the Drug Quantity Table in future editions of the USSG Manual, and that subsection (iv) of the paragraph will remain applicable to dollar amounts that, in future editions of the USSG Manual, trigger sentencing enhancements similar to that set forth in the current section 2B1.1(b)(1)(I). Any ambiguities in this regard should be resolved by the Assistant Attorney General for the Criminal Division.

      c.     whom the law enforcement agency that has placed the wanted record in the NCIC is willing to take into custody upon his or her arrest and, if necessary, seek his or her extradition to its jurisdiction.

13.    "Confidential Informant Review Committee" or "CIRC" – a committee, created by a JLEA for purposes of reviewing certain decisions relating to the registration and utilization of CIs, the chair of which is a JLEA official at or above the level of Deputy Assistant Director (or its equivalent) and the membership of which includes the following two representatives designated by the Assistant Attorney General for the Criminal Division of the Department of Justice (each of whom shall be considered a "Criminal Division representative"):  (i) a Deputy Assistant Attorney General for the Criminal Division; and (ii) an Assistant United States Attorney.

## C.   PROHIBITION ON COMMITMENTS OF IMMUNITY BY FEDERAL LAW ENFORCEMENT AGENCIES

A JLEA agent does not have any authority to make any promise or commitment that would prevent the government from prosecuting an individual for criminal activity that is not authorized pursuant to paragraph (III)(C) below, or that would limit the use of any evidence by the government, without the prior written approval of the FPO that has primary jurisdiction to prosecute the CI for such criminal activity.  A JLEA agent must take the utmost care to avoid giving any person the erroneous impression that he or she has any such authority.

## D.   REVEALING A CONFIDENTIAL INFORMANT'S TRUE IDENTITY

Except in the case of approvals and reviews described below in paragraphs (II)(A)(3) (review of long-term CIs), (III)(B)(8) (coordination concerning payments to CIs), (IV)(D)(1) (notification that CI has obtained privileged information), and (V)(D) (coordination concerning deactivation of CI, but only with respect to a CI whose identity was not previously disclosed), whenever a JLEA is required to make contact of any kind with a FPO pursuant to these Guidelines regarding a CI, the JLEA may not withhold the true identity of the CI from the FPO.

## E.   DUTY OF CANDOR

Employees of the entities to which these Guidelines apply have a duty of candor in the discharge of their responsibilities pursuant to these Guidelines.

## F.   MAINTAINING CONFIDENTIALITY

1.    A JLEA agent must take the utmost care to avoid conveying any confidential investigative information to a CI (e.g., information relating to electronic

5

surveillance, search warrants, or the identity of other actual or potential informants), other than what is necessary and appropriate for operational reasons.

2. The Chief Federal Prosecutor and his or her designee are required to maintain as confidential the identity of any CI and the information the CI has provided, unless obligated to disclose it by law or Court order. If a JLEA provides the Chief Federal Prosecutor or his or her designee with written material containing such information:

   a. Such individual is obligated to keep it confidential by placing it into a locked file cabinet when not in his or her direct care and custody;

   b. Access to the information shall be restricted to the Chief Federal Prosecutor or his or her designee and personnel deemed necessary to carry out the official duties related to the case;

   c. The Chief Federal Prosecutor or his or her designee is responsible for assuring that each person permitted access to the information is made aware of the need to preserve the security and confidentiality of the information, as provided in this policy;

   d. Prior to disclosure of the information to defense counsel or in open Court, the Chief Federal Prosecutor or his or her designee must give the JLEA an opportunity to discuss such disclosure and must comply with any other applicable provision of 28 C.F.R. §§ 16.21-16.29; and

   e. At the conclusion of a case or investigation, all written materials containing the information that have not been disclosed shall be forwarded to the JLEA that provided them.[3]

3. Employees of a JLEA and employees of a FPO have a continuing obligation after leaving employment with the Department of Justice and its constituent components to maintain as confidential the identity of any CI and the information he or she provided, unless the employee is obligated to disclose it by law or Court order. See 28 C.F.R. §§ 16.21 - 16.29.

---

[3] This requirement shall not prevent the Chief Federal Prosecutor or his or her designee from keeping in the relevant case file materials such as motions, responses, legal memoranda, Court orders, and internal office memoranda and correspondence. If any such materials contain information revealing a CI's true identity, the Chief Federal Prosecutor or his or her designee shall maintain the materials in accordance with the provisions of paragraph I(F)(2)(a)-(d), above.

## G.   EXCEPTIONS AND DISPUTE RESOLUTION

1.   Whenever any of the entities to which these Guidelines apply believes that an exception to any provision of these Guidelines is justified, or whenever there is a dispute between or among any such entities (other than a dispute with the Criminal Division of the Department of Justice) regarding these Guidelines, an exception must be sought from, or the dispute shall be resolved by, the Assistant Attorney General (AAG) for the Criminal Division or his or her designee.  The Deputy Attorney General or his or her designee shall hear appeals, if any, from decisions of the AAG.

2.   Whenever there is a dispute between the Criminal Division and any of the other entities to which these Guidelines apply, such dispute shall be resolved by the Deputy Attorney General or his or her designee.

3.   Any exception granted or dispute resolved pursuant to this paragraph shall be documented in the JLEA's files.

## H.   RIGHTS OF THIRD PARTIES

Nothing in these Guidelines is intended to create or does create an enforceable legal right or private right of action by a CI or any other person.

## I.   COMPLIANCE

1.   Within 120 days of the approval of these Guidelines by the Attorney General, each JLEA shall develop agency-specific guidelines that comply with these Guidelines, and submit such agency-specific guidelines to the AAG for the Criminal Division for review.  The agency-specific guidelines must ensure, at a minimum, that the JLEA's agents receive sufficient initial and in-service training in the use of CIs consistent with these Guidelines, and that compliance with these Guidelines is considered in the annual performance appraisal of its agents.  As part of such compliance the JLEA shall designate a senior official to oversee all aspects of its CI program, including the training of agents; registration, review and termination of CIs; and notifications to outside entities.

2.   Within 30 days of the approval of these Guidelines, each JLEA shall establish a Confidential Informant Review Committee (CIRC) for the purpose of conducting the review procedures specified in paragraphs (II)(A)(3), (II)(D)(1), and (II)(D)(2).

## II. REGISTERING A CONFIDENTIAL INFORMANT

**A.     SUITABILITY DETERMINATION**

**1.     Initial Suitability Determination**

Prior to utilizing a person as a CI, a case agent of a JLEA shall complete and sign a written Initial Suitability Report and Recommendation, which shall be forwarded to a Field Manager for his or her written approval.  In completing the Initial Suitability Report and Recommendation, the case agent must address the following factors (or indicate that a particular factor is not applicable):

a.     the person's age;

b.     the person's alien status;

c.     whether the person is a public official, law enforcement officer, union official, employee of a financial institution or school, member of the military services, a representative or affiliate of the media, or a party to, or in a position to be a party to, privileged communications (e.g., a member of the clergy, a physician, or a lawyer);

d.     the extent to which the person would make use of his or her affiliations with legitimate organizations in order to provide information or assistance to the JLEA, and the ability of the JLEA to ensure that the person's information or assistance is limited to criminal matters;

e.     the extent to which the person's information or assistance would be relevant to a present or potential investigation or prosecution and the importance of such investigation or prosecution;

f.     the nature of any relationship between the CI and the subject or target of an existing or potential investigation or prosecution, including but not limited to a current or former spousal relationship or other family tie, and any current or former employment or financial relationship;

g.     the person's motivation in providing information or assistance, including any consideration sought from the government for this assistance;

h.     the risk that the person might adversely affect a present or potential investigation or prosecution;

8

i.   the extent to which the person's information or assistance can be corroborated;

j.   the person's reliability and truthfulness;

k.   the person's prior record as a witness in any proceeding;

l.   whether the person has a criminal history, is reasonably believed to be the subject or target of a pending criminal investigation, is under arrest, or has been charged in a pending prosecution;

m.   whether the person is reasonably believed to pose a danger to the public or other criminal threat, or is reasonably believed to pose a risk of flight;

n.   whether the person is a substance abuser or has a history of substance abuse;

o.   whether the person is a relative of an employee of any law enforcement agency;

p.   the risk of physical harm that may occur to the person or his or her immediate family or close associates as a result of providing information or assistance to the JLEA; and

q.   the record of the JLEA and the record of any other law enforcement agency (if available to the JLEA) regarding the person's prior or current service as a CI, Cooperating Defendant/Witness, or Source of Information, including, but not limited to, any information regarding whether the person was at any time terminated for cause.

## 2. Continuing Suitability Review

a.   Each CI's file shall be reviewed by the case agent at least annually. The case agent shall complete and sign a written Continuing Suitability Report and Recommendation, which shall be forwarded to a Field Manager for his or her written approval. In completing the Continuing Suitability Report and Recommendation, the case agent must address the factors set forth above in paragraph (II)(A)(1) (or indicate that a particular factor is not applicable) and, in addition, the length of time that the individual has been registered as a CI and the length of time that the individual has been handled by the same agent or agents.

9

b.   Each JLEA shall establish systems to ensure that all available information that might materially alter a prior suitability determination, including, but not limited to, information pertaining to unauthorized illegal activity by the CI, is promptly reported to a Field Manager and then recorded and maintained in the CI's file.  See (IV)(B)(2) below.  Upon receipt of any such information, the Field Manager shall ensure that a new Continuing Suitability Report and Recommendation is promptly prepared in light of such new information.

3.   **Review of Long-Term Confidential Informants[4]**

a.   When a CI has been registered for more than six consecutive years, and, to the extent such a CI remains open, every six years thereafter, the CIRC shall review the CI's completed Initial and Continuing Suitability Reports and Recommendations and decide whether, and under what conditions, the individual should continue to be utilized as a CI.  A Criminal Division representative on the CIRC who disagrees with the decision to approve the continued use of such an individual as a Confidential Informant may seek review of that decision pursuant to paragraph (I)(G).

b.   Every three years after a CI's file is reviewed pursuant to the provisions of paragraph (II)(A)(3)(a), if the CI remains registered, the JLEA shall conduct an internal review, including review by a designated senior headquarters official, of the CI's completed Initial and Continuing Suitability Reports and Recommendations.  If the designated senior headquarters official decides that there are any apparent or potential problems that may warrant any change in the use of the CI, the official shall (i) consult the appropriate Senior Field Manager and (ii) provide the Initial and Continuing Suitability Reports and Recommendations to the CIRC for review in accord with paragraph (II)(A)(3)(a).

---

[4] This provision did not apply until one year after these Guidelines' original effective date of January 8, 2001, when the first set of Continuing Suitability Reports and Recommendations was completed.  Further, during the first three years that this provision is in effect, each CIRC may stagger the review of some long-term CIs in order to even out the number of files that must initially be reviewed.  However, no later than four years after the original effective date of these Guidelines, all of the CIs who were registered for more than six consecutive years as of the original effective date of these Guidelines must be reviewed pursuant to this provision.

10

**B.     REGISTRATION**

After a Field Manager has approved an individual as suitable to be a CI, the individual shall be registered with that JLEA as a CI. In registering a CI, the JLEA shall, at a minimum, document or include the following in the CI's files:

1.     a photograph of the CI;

2.     the JLEA's efforts to establish the CI's true identity;

3.     the results of a criminal history check for the CI;

4.     the Initial Suitability Report and Recommendation;

5.     any promises or benefits, and the terms of such promises or benefits, that are given a CI by a JLEA or any other law enforcement agency (if available to the JLEA);

6.     any promises or benefits, and the terms of such promises or benefits, that are given a CI by any FPO or any state or local prosecuting office (if available to the JLEA); and

7.     all information that is required to be documented in the CI's files pursuant to these Guidelines (e.g., the provision of the instructions set forth in the next paragraph).

**C.     INSTRUCTIONS**

1.     In registering a CI, at least one agent of the JLEA, along with one additional agent or other law enforcement official present as a witness, shall review with the CI written instructions that state that:

a.     information provided by the CI to the JLEA must be truthful;

b.     the CI's assistance and the information provided are entirely voluntary;

c.     the United States Government will strive to protect the CI's identity but cannot guarantee that it will not be divulged;

d.     [if applicable:] the JLEA on its own cannot promise or agree to any immunity from prosecution or other consideration by a Federal Prosecutor's Office or a Court in exchange for the CI's cooperation, since the decision to confer any such benefit lies within the exclusive discretion

11

of the Federal Prosecutor's Office and the Court. However, the JLEA will consider (but not necessarily act upon) a request by the CI to advise the appropriate Federal Prosecutor's Office or Court of the nature and extent of his or her assistance to the JLEA;[5]

e. [if applicable:] the CI has not been authorized to engage in any criminal activity and has no immunity from prosecution for any unauthorized criminal activity;[6]

f. the CI must abide by the instructions of the JLEA and must not take or seek to take any independent action on behalf of the United States Government;

g. the CI is not an employee of the United States Government and may not represent himself or herself as such;

h. the CI may not enter into any contract or incur any obligation on behalf of the United States Government, except as specifically instructed and approved by the JLEA;

i. the JLEA cannot guarantee any rewards, payments, or other compensation to the CI;

j. in the event that the CI receives any rewards, payments, or other compensation from the JLEA, the CI is liable for any taxes that may be owed; and

---

[5] This instruction should be provided if there is any apparent issue of criminal liability or penalties that relates to the CI. Whether or not this instruction is given to a CI, the JLEA does not have any authority to make any promise or commitment that would prevent the government from prosecuting an individual, except as provided in paragraphs (I)(C) above and (III)(C) below, and a JLEA agent must avoid giving any person the erroneous impression that he or she has any such authority.

[6] This instruction should be provided to any CI who is not authorized to engage in otherwise illegal activity. See paragraph (III)(C)(4) for instructions that must be provided to a CI who is, in fact, authorized to engage in otherwise illegal conduct.

12

k.  [if applicable:] no promises or commitments can be made, except by the Immigration and Naturalization Service, regarding the alien status of any person or the right of any person to enter or remain in the United States.[7]

2.  The content and meaning of each of the foregoing instructional points must be clearly conveyed to the CI.  Immediately after these instructions have been given, the agent shall require the CI to acknowledge his or her receipt and understanding of the instructions.  The agent and the other law enforcement official shall document that the instructions were reviewed with the CI and that the CI acknowledged the instructions and his or her understanding of them.  As soon as practicable thereafter, a Field Manager shall review and, if warranted, approve the documentation.

3.  The instruction and documentation procedures shall be repeated whenever it appears necessary or prudent to do so, and in any event at least every twelve months.

## D.   SPECIAL APPROVAL REQUIREMENTS

### 1.   High Level Confidential Informants

a.  Prior to utilizing an individual as a High Level Confidential Informant, a case agent of a JLEA shall first obtain the written approval of the CIRC. A Criminal Division representative on the CIRC who disagrees with a decision to approve the use of an individual as a High Level Confidential Informant may seek review of that decision pursuant to paragraph (I)(G).

b.  In deciding whether to approve the use of a High Level Confidential Informant, the CIRC shall have access to any Initial or Completed Suitability Reports and Recommendations for the individual in question.

c.  After a final decision has been made to approve the use of a High Level Confidential Informant, the CIRC shall consider whether to notify the Chief Federal Prosecutor of any FPO that is participating in the conduct of an investigation that is, or would be, utilizing the High Level Confidential Informant, or any FPO that has been, or would be, working with that individual in connection with a prosecution, of the decision to approve that individual as a High Level Confidential Informant.  If the CIRC determines that no such notification shall be made, the reason or reasons for the determination shall be provided to the Criminal Division

---

[7] This instruction should be provided if there is any apparent issue of immigration status that relates to the CI and the JLEA is not the Immigration and Naturalization Service.

representatives on the CIRC. A Criminal Division representative on the CIRC who disagrees with a decision not to provide such notification may seek review of that decision pursuant to paragraph (I)(G).

**2.  Individuals Under the Obligation of a Legal Privilege of Confidentiality or Affiliated with the Media**

    a.    Prior to utilizing as a Confidential Informant an individual who is under the obligation of a legal privilege of confidentiality or affiliated with the media, a case agent of a JLEA shall first obtain the written approval of the CIRC. A Criminal Division representative on the CIRC who disagrees with a decision to approve the use of such an individual as a Confidential Informant may seek review of that decision pursuant to paragraph (I)(G).

    b.    In deciding whether to approve the use as a Confidential Informant of an individual who is under the obligation of a legal privilege of confidentiality or affiliated with the media, the CIRC shall have access to any Initial or Completed Suitability Reports and Recommendations for the individual in question.

    c.    After a final decision has been made to approve the use of an individual who is under the obligation of a legal privilege of confidentiality or affiliated with the media as a Confidential Informant, the CIRC shall consider whether to notify the Chief Federal Prosecutor of any FPO that is participating in the conduct of an investigation that is, or would be, utilizing the individual, or any FPO that has been, or would be, working with that individual in connection with a prosecution, of the decision to approve that individual as a Confidential Informant. If the CIRC determines that no such notification shall be made, the reason or reasons for the determination shall be provided to the Criminal Division representatives on the CIRC. A Criminal Division representative on the CIRC who disagrees with a decision not to provide such notification may seek review of that decision pursuant to paragraph (I)(G).

**3.  Federal Prisoners, Probationers, Parolees, Detainees, and Supervised Releasees**

    a.    Consistent with extant Department of Justice requirements, a JLEA must receive the approval of the Criminal Division's Office of Enforcement Operations ("OEO") prior to utilizing as a CI an individual who is in the custody of the United States Marshals Service or the Bureau of Prisons, or who is under Bureau of Prisons supervision. See U.S.A.M. § 9-21.050.

14

b.     Prior to utilizing a federal probationer, parolee, or supervised releasee as a CI, a Field Manager of a JLEA shall determine if the use of that person in such a capacity would violate the terms and conditions of the person's probation, parole, or supervised release.  If the Field Manger has reason to believe that it would violate such terms and conditions, prior to using the person as a CI, the Field Manager or his or her designee must obtain the permission of a federal probation, parole, or supervised release official with authority to grant such permission, which permission shall be documented in the CI's files.  If such permission is denied or it is inappropriate for operational reasons to contact the appropriate federal official, the JLEA may seek to obtain authorization for the use of such individual as a CI from the Court then responsible for the individual's probation, parole, or supervised release, provided that the JLEA first consults with the FPO for that District.

c.     In situations where a FPO is either participating in the conduct of an investigation by a JLEA in which a federal probationer, parolee, or supervised releasee would be utilized as a CI, or where a FPO would be working with a federal probationer, parolee, or supervised releasee in connection with a prosecution, the JLEA shall notify the attorney assigned to the matter prior to using the person as a CI.

**4.     Current or Former Participants in the Witness Security Program**

a.     Consistent with extant Department of Justice requirements, a JLEA must receive the approval of OEO and the sponsoring prosecutor (or his or her successor) prior to utilizing as a CI a current or former participant in the Federal Witness Security Program, provided further that the OEO will coordinate such matters with the United States Marshals Service.  See U.S.A.M. § 9-21.800.

b.     In situations where a FPO is either participating in the conduct of an investigation by a JLEA in which a current or former participant in the Witness Security Program would be utilized as a CI, or where a FPO would be working with a current or former participant in the Witness Security Program in connection with a prosecution, the JLEA shall notify the attorney assigned to the matter prior to using the person as a CI.

**5.     State or Local Prisoners, Probationers, Parolees, or Supervised Releasees**

a.     Prior to utilizing a state or local prisoner, probationer, parolee, or supervised releasee as a CI, a Field Manager of a JLEA shall determine if the use of that person in such a capacity would violate the terms and

conditions of the person's incarceration, probation, parole, or supervised release.  If the Field Manger has reason to believe that it would violate such terms and conditions, prior to using the person as a CI, the Field Manager or his or her designee must obtain the permission of a state or local prison, probation, parole, or supervised release official with authority to grant such permission, which permission shall be documented in the CI's files.  If such permission is denied or it is inappropriate for operational reasons to contact the appropriate state or local official, the JLEA may seek to obtain authorization for the use of such individual as a CI from the state or local Court then responsible for the individual's incarceration, probation, parole, or supervised release.

b.      In situations where a FPO is either participating in the conduct of an investigation by a JLEA in which a state or local prisoner, probationer, parolee, or supervised releasee would be utilized as a CI, or where a FPO would be working with a state or local prisoner, probationer, parolee, or supervised releasee in connection with a prosecution, the JLEA shall notify the attorney assigned to the matter prior to using the person as a CI.

## 6.      Fugitives

a.      Except as provided below, a JLEA shall have no communication with a current or former CI who is a fugitive.

b.      A JLEA is permitted to have communication with a current or former CI who is a fugitive:

(i) if the communication is part of a legitimate effort by that JLEA to arrest the fugitive; or

(ii) if approved, in advance whenever possible, by a Senior Field Manager of any federal, state, or local law enforcement agency that has a wanted record for the individual in the NCIC and, in the case of a federal warrant, by the FPO for the issuing District.

c.      A JLEA that has communication with a fugitive must promptly report such communication to all federal, state, and local law enforcement agencies and other law enforcement agencies having a wanted record for the individual in the NCIC, and document those communications in the CI's files.

16

### III.  RESPONSIBILITIES REGARDING REGISTERED CONFIDENTIAL INFORMANTS

**A.      GENERAL PROVISIONS**

**1.      No Interference With an Investigation of a Confidential Informant**

A JLEA agent must take the utmost care to avoid interfering with or impeding any criminal investigation or arrest of a CI.  No agent shall reveal to a CI any information relating to an investigation of the CI.  An agent shall not confirm or deny the existence of any investigation of the CI, unless authorized to do so by the Chief Federal Prosecutor; nor shall an agent agree to a request from a CI to determine whether the CI is the subject of any investigation.

**2.      Prohibited Transactions and Relationships**

a.      A JLEA agent shall not: (i) exchange gifts with a CI; (ii) provide the CI with any thing of more than nominal value; (iii) receive any thing of more than nominal value from a CI; or (iv) engage in any business or financial transactions with a CI.  Except as authorized pursuant to paragraph (III)(B) below, any exception to this provision requires the written approval of a Field Manager, in advance whenever possible, based on a written finding by the Field Manager that the event or transaction in question is necessary and appropriate for operational reasons.  This written finding shall be maintained in the CI's files.

b.      A Federal Law Enforcement agent shall not socialize with a CI except to the extent necessary and appropriate for operational reasons.

c.      In situations where a FPO is either participating in the conduct of an investigation by a JLEA that is utilizing a CI, or working with a CI in connection with a prosecution, the JLEA shall notify the attorney assigned to the matter, in advance whenever possible, if the JLEA approves an exception under paragraph (III)(A)(2)(a) or if a Federal Law Enforcement agent socializes with a CI in a manner not permitted under paragraph (III)(A)(2)(b).

**B.      MONETARY PAYMENTS**

**1.      General**

Monies that a JLEA pays to a CI in the form of fees and rewards shall be commensurate with the value, as determined by the JLEA, of the information he or she provided or the

17

assistance he or she rendered to that JLEA.  A JLEA's reimbursement of expenses incurred by a CI shall be based upon actual expenses incurred.

### 2.       Prohibition Against Contingent Payments

Under no circumstances shall any payments to a CI be contingent upon the conviction or punishment of any individual.

### 3.       Approval for a Single Payment

A single payment of between $2,500 and $25,000 per case to a CI must be authorized, at a minimum, by a JLEA's Senior Field Manager.  A single payment in excess of $25,000 per case shall be made only with the authorization of the Senior Field Manager and the express approval of a designated senior headquarters official.

### 4.       Approval for Annual Payments

Consistent with paragraph (III)(B)(3) above, payments by a JLEA to a CI that exceed an aggregate of $100,000 within a one-year period, as that period is defined by the JLEA, shall be made only with the authorization of the Senior Field Manager and the express approval of a designated senior headquarters official.  The headquarters official may authorize additional aggregate annual payments in increments of $50,000 or less.

### 5.       Approval for Aggregate Payments

Consistent with paragraphs (III)(B)(3)-(4), and regardless of the time frame, any payments by a JLEA to a CI that exceed an aggregate of $200,000 shall be made only with the authorization of the Senior Field Manager and the express approval of a designated senior headquarters official.  After the headquarters official has approved payments to a CI that exceed an aggregate of $200,000, the headquarters official may authorize, subject to paragraph (III)(B)(4) above, additional aggregate payments in increments of $100,000 or less.

### 6.       Documentation of Payment

The payment of any monies to a CI shall be witnessed by at least two law enforcement representatives.  Immediately afer receiving a payment, the CI shall be required to sign or initial, and date, a written receipt.[8]  At the time of the payment, the representatives shall advise the CI that the monies may be taxable income that must be reported to appropriate tax authorities.  Thereafter, those representatives shall document the payment and the advice of taxability in the

---

[8] The CI may sign or initial the written receipt by using a pseudonym which has been previously approved and documented in the CI's files and designated for use by only one CI.

18

JLEA's files.  The documentation of payment shall specify whether the payment is for information, services, or expenses.

### 7.    Accounting and Reconciliation Procedures

Each JLEA shall establish accounting and reconciliation procedures to comply with these Guidelines.  Among other things, these procedures shall reflect all monies paid to a CI subsequent to the issuance of these Guidelines.

### 8.    Coordination with Prosecution

In situations where a FPO is either participating in the conduct of an investigation by a JLEA that is utilizing a CI, or working with a CI in connection with a prosecution, the JLEA shall coordinate with the attorney assigned to the matter, in advance whenever possible, the payment of monies to the CI pursuant to paragraphs (III)(B)(3)-(5) above.

## C.    AUTHORIZATION OF OTHERWISE ILLEGAL ACTIVITY

### 1.    General Provisions

a.    A JLEA shall not authorize a CI to engage in any activity that otherwise would constitute a misdemeanor or felony under federal, state, or local law if engaged in by a person acting without authorization, except as provided in the authorization provisions in paragraph (III)(C)(2) below.

b.    A JLEA is never permitted to authorize a CI to:

(i) participate in an act of violence;

(ii) participate in an act that constitutes obstruction of justice (e.g., perjury, witness tampering, witness intimidation, entrapment, or the fabrication, alteration, or destruction of evidence);

(iii) participate in an act designed to obtain information for the JLEA that would be unlawful if conducted by a law enforcement agent (e.g., breaking and entering, illegal wiretapping, illegal opening or tampering with the mail, or trespass amounting to an illegal search); or

(iv)  initiate or instigate a plan or strategy to commit a federal, state, or local offense.

19

2.    **Authorization**

    a.    Tier 1 Otherwise Illegal Activity must be authorized in advance and in writing for a specified period, not to exceed 90 days, by:

        (i) a JLEA's Special Agent in Charge (or the equivalent); and

        (ii) the appropriate Chief Federal Prosecutor.[9]

    b.    Tier 2 Otherwise Illegal Activity must be authorized in advance and in writing for a specified period, not to exceed 90 days, by a JLEA's Senior Field Manager.

    c.    For purposes of this paragraph, the "appropriate Chief Federal Prosecutor" is the Chief Federal Prosecutor that: (i) is participating in the conduct of an investigation by a JLEA that is utilizing that active CI, or is working with that active CI in connection with a prosecution; (ii) with respect to Otherwise Illegal Activity that would constitute a violation of federal law, would have primary jurisdiction to prosecute the Otherwise Illegal Activity; or (iii) with respect to Otherwise Illegal Activity that would constitute a violation only of state or local law, is located where the otherwise criminal activity is to occur.

3.    **Findings**

    a.    The JLEA official who authorizes Tier 1 or 2 Otherwise Illegal Activity must make a finding, which shall be documented in the CI's files, that authorization for the CI to engage in the Tier 1 or 2 Otherwise Illegal Activity is –

        (i) necessary either to -

            (A) obtain information or evidence essential for the success of an investigation that is not reasonably available without such authorization, or

---

[9] Even without an express act of Congress authorizing the conduct at issue, it is within the power and the duty of federal prosecutors, as executive branch officers, to take reasonable measures to discharge the duties imposed on them as executive branch officers, and they will be immune from state action if they take such measures under color of federal law and in good faith.

20

(B)  prevent death, serious bodily injury, or significant damage to property; and

(ii) that in either case the benefits to be obtained from the CI's participation in the Tier 1 or 2 Otherwise Illegal Activity outweigh the risks.

b.    In making these findings, the JLEA shall consider, among other things:

(i) the importance of the investigation;

(ii) the likelihood that the information or evidence sought will be obtained;

(iii) the risk that the CI might misunderstand or exceed the scope of his authorization;

(iv) the extent of the CI's participation in the Otherwise Illegal Activity;

(v) the risk that the JLEA will not be able to supervise closely the CI's participation in the Otherwise Illegal Activity;

(vi) the risk of violence, physical injury, property damage, and financial loss to the CI or others; and

(vii)  the risk that the JLEA will not be able to ensure that the CI does not profit from his or her participation in the authorized Otherwise Illegal Activity.

**4.    Instructions**

a.    After a CI is authorized to engage in Tier 1 or 2 Otherwise Illegal Activity, at least one agent of the JLEA, along with one additional agent or other law enforcement official present as a witness, shall review with the CI written instructions that state, at a minimum, that:

(i) the CI is authorized only to engage in the specific conduct set forth in the written authorization described above and not in any other illegal activity;

(ii) the CI's authorization is limited to the time period specified in the written authorization;

21

(iii) under no circumstance may the CI:

(A) participate in an act of violence;

(B) participate in an act that constitutes obstruction of justice (e.g., perjury, witness tampering, witness intimidation, entrapment, or the fabrication, alteration, or destruction of evidence);

(C) participate in an act designed to obtain information for the JLEA that would be unlawful if conducted by a law enforcement agent (e.g., breaking and entering, illegal wiretapping, illegal opening or tampering with the mail, or trespass amounting to an illegal search); or

(D) initiate or instigate a plan or strategy to commit a federal, state, or local offense;

(iv) if the CI is asked by any person to participate in any such prohibited conduct, or if he or she learns of plans to engage in such conduct, he or she must immediately report the matter to his or her contact agent; and

(v) participation in any prohibited conduct could subject the CI to full criminal prosecution.

b.  Immediately after these instructions have been given, the CI shall be required to sign or initial, and date, a written acknowledgment of the instructions.[10] As soon as practicable thereafter, a Field Manager shall review and, if warranted, approve the written acknowledgment.

## 5.    Precautionary Measures

Whenever a JLEA has authorized a CI to engage in Tier 1 or 2 Otherwise Illegal Activity, it must take all reasonable steps to:  (a) supervise closely the illegal activities of the CI; (b) minimize the adverse effect of the authorized Otherwise Illegal Activity on innocent individuals; and (c) ensure that the CI does not profit from his or her participation in the authorized Otherwise Illegal Activity.

---

[10] The CI may sign or initial the written acknowledgment by using a pseudonym which has been previously approved and documented in the CI's files and designated for use by only one CI.

**6.      Suspension of Authorization**

Whenever a JLEA cannot, for legitimate reasons unrelated to the CI's conduct (e.g., unavailability of the case agent), comply with the precautionary measures described above, it shall immediately: (a) suspend the CI's authorization to engage in Otherwise Illegal Activity until such time as the precautionary measures can be complied with; (b) inform the CI that his or her authorization to engage in any Otherwise Illegal Activity has been suspended until that time; and (c) document these actions in the CI's files.

**7.      Revocation of Authorization**

a.      If a JLEA has reason to believe that a CI has failed to comply with the specific terms of the authorization of Tier 1 or 2 Otherwise Illegal Activity, it shall immediately: (i) revoke the CI's authorization to engage in Otherwise Illegal Activity; (ii) inform the CI that he or she is no longer authorized to engage in any Otherwise Illegal Activity; (iii) comply with the notification requirement of paragraph (IV)(B) below; (iv) make a determination whether the CI should be deactivated pursuant to paragraph (V); and (v) document these actions in the CI's files.

b.      Immediately afer the CI has been informed that he or she is no longer authorized to engage in any Otherwise Illegal Activity, the CI shall be required to sign or initial, and date, a written acknowledgment that he or she has been informed of this fact.[11]  As soon as practicable thereafter, a Field Manager shall review and, if warranted, approve the written acknowledgment.

**8.      Renewal and Expansion of Authorization**

a.      A JLEA that seeks to re-authorize any CI to engage in Tier 1 or 2 Otherwise Illegal Activity after the expiration of the authorized time period, or after revocation of authorization, must first comply with the procedures set forth above in paragraphs (III)(C)(2)-(5).

---

[11] The CI may sign or initial the written acknowledgment by using a pseudonym which has been previously approved and documented in the CI's files and designated for use by only one CI.  If the CI refuses to sign or initial the written acknowledgment, the JLEA agent who informed the CI of the revocation of authorization shall document that the CI has orally acknowledged being so informed and the Field Manager shall, as soon as practicable thereafter, review and, if warranted, approve the written documentation.

b.  A JLEA that seeks to expand in any material way a CI's authorization to engage in Tier 1 or 2 Otherwise Illegal Activity by the JLEA must first comply with the procedures set forth above in paragraphs (III)(C)(2)-(5).

9.  **Emergency Authorization**

a.  In exceptional circumstances, a JLEA's Special Agent in Charge (or the equivalent) and the appropriate Chief Federal Prosecutor may orally authorize a CI to engage in Tier 1 Otherwise Illegal Activity without complying with the documentation requirements of paragraphs (III)(C)(2)-(4) above when they each determine that a highly significant and unanticipated investigative opportunity would be lost were the time taken to comply with these requirements. In such an event, the documentation requirements, as well as a written justification for the oral authorization, shall be completed within 48 hours of the oral approval and maintained in the CI's files.

b.  In exceptional circumstances, a JLEA's Senior Field Manager may orally authorize a CI to engage in Tier 2 Otherwise Illegal Activity without complying with the documentation requirements of paragraphs (III)(C)(2)-(4) above when he or she determines that a highly significant and unanticipated investigative opportunity would be lost were the time taken to comply with these requirements. In such an event, the documentation requirements, as well as a written justification for the oral authorization, shall be completed within 48 hours of the oral approval and maintained in the CI's files.

10.  **Designees**

A JLEA's Special Agent in Charge (or the equivalent) and the appropriate Chief Federal Prosecutor may, with the concurrence of each other, agree to designate particular individuals in their respective offices to carry out the approval functions assigned to them above in paragraphs (III)(C)(2)-(9).

**D.  LISTING A CONFIDENTIAL INFORMANT IN AN ELECTRONIC SURVEILLANCE APPLICATION**

1.  A JLEA shall not name a CI as a named interceptee or a violator in an affidavit in support of an application made pursuant to 18 U.S.C. § 2516 for an electronic surveillance order unless the JLEA believes that: (a) omitting the name of the CI from the affidavit would endanger that person's life or otherwise jeopardize an ongoing investigation; or (b) the CI is a bona fide subject of the investigation based on his or her suspected involvement in unauthorized criminal activity.

24

2.      In the event that a CI is named in an electronic surveillance affidavit under paragraph (III)(D)(1) above, the JLEA must inform the Federal prosecutor making the application and the Court to which the application is made of the actual status of the CI.

## IV. SPECIAL NOTIFICATION REQUIREMENTS

### A.    NOTIFICATION OF INVESTIGATION OR PROSECUTION

1.      When a JLEA has reasonable grounds to believe that a current or former CI is being prosecuted by, is the target of an investigation by, or is expected to become a target of an investigation by a FPO for engaging in alleged felonious criminal activity, a Special Agent in Charge (or the equivalent) of the JLEA must immediately notify the Chief Federal Prosecutor of that individual's status as a current or former CI.[12]

2.      Whenever such a notification is provided, the Chief Federal Prosecutor and Special Agent in Charge (or the equivalent), with the concurrence of each other, shall notify any other federal, state or local prosecutor's offices or law enforcement agencies that are participating in the investigation or prosecution of the CI.

### B.    NOTIFICATION OF UNAUTHORIZED ILLEGAL ACTIVITY

1.      Whenever a JLEA has reasonable grounds to believe that a CI who is currently authorized to engage in specific Tier 1 or 2 Otherwise Illegal Activity has engaged in unauthorized criminal activity, or whenever a JLEA knows that a CI who has no current authorization to engage in any Tier 1 or 2 Otherwise Illegal Activity has engaged in any criminal activity, a Special Agent in Charge of the JLEA (or the equivalent) shall immediately notify the following Chief Federal Prosecutors of the CI's criminal activity and his or her status as a CI:

    a.     the Chief Federal Prosecutor whose District is located where the criminal activity primarily occurred, unless a state or local prosecuting office in that District has filed charges against the CI for the criminal activity and there clearly is no basis for federal prosecution in that District by the Chief Federal Prosecutor;

---

[12] A target is "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." U.S.A.M. § 9-11.151.

b.     the Chief Federal Prosecutor, if any, whose District is participating in the conduct of an investigation that is utilizing that active CI, or is working with that active CI in connection with a prosecution; and

c.     the Chief Federal Prosecutor, if any, who authorized the CI to engage in Tier 1 Otherwise Illegal Activity pursuant to paragraph (III)(C)(2)(a) above.[13]

2.     Whenever such notifications are provided, the Chief Federal Prosecutor(s) of the FPOs and the Special Agent in Charge (or the equivalent), with the concurrence of each other, shall notify any state or local prosecutor's office that has jurisdiction over the CI's criminal activity, and that has not already filed charges against the CI for the criminal activity, of the fact that the CI has engaged in such criminal activity. The Chief Federal Prosecutor(s) and the Special Agent in Charge (or the equivalent) are not required, but may with the concurrence of each other, also notify the state and local prosecutor's office of the person's status as a CI.

## C.    NOTIFICATION REGARDING CERTAIN FEDERAL JUDICIAL PROCEEDINGS

Whenever a JLEA has reasonable grounds to believe that: (1) a current or former CI has been called to testify by the prosecution in any federal grand jury or judicial proceeding; (2) the statements of a current or former CI have been, or will be, utilized by the prosecution in any federal judicial proceeding; or (3) a federal prosecutor intends to represent to a Court or jury that a current or former CI is or was a co-conspirator or other criminally culpable participant in any criminal activity, a Special Agent in Charge (or the equivalent) of the JLEA shall immediately notify the Chief Federal Prosecutor for that proceeding of the individual's status as a current or former CI.

## D.    PRIVILEGED OR EXCULPATORY INFORMATION

1.     In situations where a FPO is either participating in the conduct of an investigation by a JLEA that is utilizing a CI, or working with a CI in connection with a prosecution, the JLEA shall notify the attorney assigned to the matter, in advance whenever possible, if the JLEA has reasonable grounds to believe that a CI will obtain or provide information that is subject to, or arguably subject to, a legal privilege of confidentiality belonging to someone other than the CI.

---

[13]   Whenever such notifications to FPOs are provided, the JLEA must also comply with the Continuing Suitability requirements described above in paragraph (II)(A)(2).

26

2.      If the JLEA has reasonable grounds to believe that a current or former CI has information that is exculpatory as to a person who is expected to become a target of an investigation, or as to a target of an investigation, or as to a defendant (including a convicted defendant), the JLEA shall notify the Chief Federal Prosecutor responsible for the investigation or prosecution of such exculpatory information.

## E.  RESPONDING TO REQUESTS FROM CHIEF FEDERAL PROSECUTORS REGARDING A CONFIDENTIAL INFORMANT

If a Chief Federal Prosecutor seeks information from a Special Agent in Charge (or the equivalent) as to whether a particular individual is a current or former CI, and states the specific basis for his or her request, the Special Agent in Charge (or the equivalent) shall provide such information promptly. If the Special Agent in Charge (or the equivalent) has an objection to providing such information based on specific circumstances of the case, he or she shall explain the objection to the Chief Federal Prosecutor making the request and any remaining disagreement as to whether the information should be provided shall be resolved pursuant to paragraph (I)(G).

## F.  FILE REVIEWS

Whenever a JLEA discloses any information about a CI to a FPO pursuant to paragraphs (IV)(A)-(E), the Special Agent in Charge (or the equivalent) and the Chief Federal Prosecutor shall consult to facilitate any review and copying of the CI's files by the Chief Federal Prosecutor that might be necessary for the Chief Federal Prosecutor to fulfill his or her office's disclosure obligations.

## G.  DESIGNEES

A Special Agent in Charge (or the equivalent) and a Chief Federal Prosecutor may, with the concurrence of each other, agree to designate particular individuals in their respective offices to carry out the functions assigned to them in paragraphs (IV)(A)-(F).

## V. DEACTIVATION OF CONFIDENTIAL INFORMANTS

## A.  GENERAL PROVISIONS

A JLEA that determines that a CI should be deactivated for cause or for any other reason shall immediately:

1.      deactivate the individual;

2.      document the reasons for the decision to deactivate the individual as a CI in the CI's files;

3.    if the CI can be located, notify the CI that he or she has been deactivated as a CI and obtain documentation that such notification was provided in the same manner as set forth in paragraph (II)(C)(2); and

4.    if the CI was authorized to engage in Tier 1 or Tier 2 Otherwise Illegal Activity pursuant to paragraph (III)(C)(2)(a)-(b), revoke that authorization under the provisions of paragraph (III)(C)(7).

## B.   DELAYED NOTIFICATION TO A CONFIDENTIAL INFORMANT

A JLEA may delay providing the notification to the CI described above in Paragraph (V)(A)(3) during the time such notification might jeopardize an ongoing investigation or prosecution or might cause the flight from prosecution of any person. Whenever a decision is made to delay providing a notification, that decision, and the reasons supporting it, must be documented in the CI's files.

## C.   CONTACTS WITH FORMER CONFIDENTIAL INFORMANTS DEACTIVATED FOR CAUSE

Absent exceptional circumstances that are approved by a Senior Field Manager, in advance whenever possible, an agent of a JLEA shall not initiate contacts with, or respond to contacts from, a former CI who has been deactivated for cause. When granted, such approval shall be documented in the CI's files.

## D.   COORDINATION WITH PROSECUTORS

In situations where a FPO is either participating in the conduct of an investigation by a JLEA that is utilizing a CI, or working with a CI in connection with a prosecution, the JLEA shall coordinate with the attorney assigned to the matter, in advance whenever possible, regarding any of the decisions described in paragraphs (V)(A)-(C).

Date:  __May 30, 2002__                            John Ashcroft
                                              Attorney General

28

# EXHIBIT B

Search bop.gov

| Home | About Us | Inmates | Locations | Jobs | Business | Resources | Contact Us |

# Find an inmate.

Locate the whereabouts of a federal inmate incarcerated from 1982 to the present.

**Find By Number**   Find By Name

Type of Number

BOP Register Number

Number

86001-071

Search

Result using number **86001-071**

🗑 Clear Form

## ANTHONY BROWN

Register Number: 86001-071

Age:    46
Race:   Black
Sex:    Male

NOT IN BOP CUSTODY

Released Date: UNKNOWN

**Related Links**

Call or email
Send mail/package
Send money
Visit
Voice a concern

About the inmate locator & record availability

**About Us**
About Our Agency
About Our Facilities
Historical Information
Statistics

**Inmates**
Find an Inmate
Communications
Custody & Care
Visiting
Voice a Concern

**Locations**
List of our Facilities
Map of our Locations
Search for a Facility

**Jobs**
Life at the BOP
Explore Opportunities
Current Openings
Our Hiring Process

**Business**
Acquisitions
Solicitations & Awards
Reentry Contracting

**Resources**
Policy & Forms
News Articles
Publications
Research & Reports

**Resources For ...**
Victims & Witnesses
Employees
Ex-Offenders
Media Reps

Contact Us | FOIA | No FEAR Act | Privacy Policy | Information Quality | Website Feedback
USA.gov | Justice.gov | Open Government